UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRISHA M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22 CV 48 JMB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the decision of the Commissioner for Social Security is affirmed.

### I.  Procedural History

On September 11, 2014, Plaintiff Trisha M. filed an application for supplemental security income, Title XVI, 42 U.S.C. §§ 1381, *et seq*., and disability insurance benefits, Title II, 42 U.S.C. §§ 401, *et seq*. (Tr. 171-183).   In her applications, she alleged that she became disabled on December 24, 2013 because of anxiety disorder, depression, bulging discs in her neck, and sciatic nerve pain in her leg (Tr. 213, 217).  Plaintiff's applications were denied initially (Tr. 89-103), she received an unfavorable decision after a hearing before an Administrative Law Judge (ALJ) on July 14, 2016 (Tr. 956-977), and the Appeals Council denied her request for review on July 18, 2017 (Tr. 978-983).  Plaintiff appealed this decision to the United States District Court for the

Eastern District of Missouri (before the honorable District Judge Audrey G. Fleissig), and the case was reversed and remanded for consideration of Plaintiff's reaching ability (Tr. 996-1005).

Upon remand, an ALJ conducted a hearing and issued another unfavorable decision on August 21, 2019 (Tr. 868-918; 1015-1029).   The ALJ determined that Plaintiff had a variety of severe impairments, including cervical and lumbar disc disease, major depressive disorder, and personality disorder.  The ALJ found, however, that Plaintiff had the residual functional capacity (RFC) to perform light work with some modifications and that jobs existed in significant levels in the national economy that Plaintiff could perform (Tr. 1023, 1028).  In doing so, the ALJ found that Plaintiff responded positively to treatment of her physical ailments, had limited mental health treatment, was able to work despite her impairments, and engaged in activities of daily living (Tr. 1027).  On appeal, the Appeals Council found that ALJ did not fully evaluate the opinion evidence of Dr. Timothy Graven, a treating source (especially as to Plaintiff's reaching ability), gave too much weight to one provider; and did not address a third-party function report provided by Martha Cole (Tr. 1039-1040).   As such, the matter was again remanded to the ALJ for further consideration.

Plaintiff and counsel appeared for a (third) hearing on October 20, 2020 before an ALJ (Tr. 919-955).  Plaintiff testified concerning her disability, daily activities, functional limitations, and past work.  The ALJ also received testimony from vocational expert Larry Underwood.  The ALJ issued a decision denying Plaintiff's application on January 11, 2021 (Tr. 1043-1068).  The Appeals Council denied Plaintiff's request for review on June 21, 2022 (Tr. 861-867). Accordingly, this ALJ's decision stands as the Commissioner's final decision.

## II.  Evidence Before the ALJ

### A.      Disability and Function Reports and October 20, 2020 Hearing Testimony

Plaintiff was born in April 1977 and was 36 years old on the alleged onset date of December 24, 2013 (Tr. 213).  She completed a GED in May, 2000 and completed a real estate salesperson course in 2001 (Tr. 218).  Plaintiff has not worked since 2014, when her income was $272.63 (Tr. 1278).

In her September 29, 2014 Function Report, she describes pain in her neck, low back, sciatic nerve, and hands (Tr. 225).  She has no problems with personal care and occasionally helped an older couple (Tr. 226).  She cooks meals, completes housework (although it takes time and with breaks), drives, walks a little, and shops in stores for food and necessities (Tr. 228).  She spends time in pools and plays cards/sits with friends (Tr. 229).  However, she has been unable to engage in other activities like swimming, horseback riding, skiing, and golfing (Tr. 229).  As to her functional limitations, she has difficulty lifting more than 10 pounds, squatting, standing, reaching with arms, walking more than a block, concentrating, completing tasks, climbing stairs, hearing, seeing, and remembering (Tr. 230).  She cannot pay attention and needs to re-read instructions (Tr. 230).  Her medications cause drowsiness and constipation (Tr. 231).

Her friend, Martha Cole, echoed a number of these limitations in her third-party function report dated October 8, 2014 (Tr. 242).   Ms. Cole states that Plaintiff has head, back and neck pain (Tr. 242).  She states that Plaintiff cooks easy meals, does housework but needs to sit often, and cannot stand for long (Tr. 244-245).  Ms. Cole further indicates that Plaintiff can only lift 10 pounds or less, that she has trouble sitting, standing, climbing stairs, remembering, and concentrating, and that her eyesight has worsened (Tr. 247).

At the October 20, 2020 hearing, Plaintiff testified that she could dress herself and take care of her personal needs, prepare food, drive for an hour, and plant flowers in the Spring (Tr. 930-932).  In her spare time, she watches TV (Tr. 933).  She also went to Florida by car as a passenger – however, she had to stop a number of times, was in a reclining position, and was drained and sore upon her return (Tr. 942).  She further testified that she takes breaks while cooking (Tr. 935).  She states that her arms go numb with repetitive actions and reaching (Tr. 935).  She has pain in her neck and has trouble looking down for more than 20 to 30 minutes without pain (Tr. 935-936).  She also has headaches that make her sick and vomit (Tr. 936).  She has pain in her low back that radiates to her legs and is worsened by walking, standing, and sitting too long (Tr. 937).  She has problems with her knees – they gave out once and she fell, causing a chip in her kneecap (Tr. 940).  She has had pain relieving shots in her neck and lower back that relieved the pain for about 2 months (Tr. 938).  She takes Hydrocodone for her pain twice a day which makes her tired (Tr. 939).  She also takes medication for anxiety and deals with depression and paranoia (Tr. 940-942).  Plaintiff has not seen a therapist except during a four-day in-patient treatment period in February 2020; although she recently got a referral for a therapist (Tr. 944).

Vocational Expert Larry Underwood was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age, education, and past relevant work experience who has the following limitations:  never climb ladders, ropes or scaffolds, or be exposed to unprotected heights or hazardous work environments; occasionally climb stairs or ramps; occasionally stoop, kneel, crouch and crawl; occasionally reach overhead; frequently reach in all other directions; frequently engage in tasks that require fingering and handling; remembering and carrying out simple, routine task and make simple work-related decisions; not perform production-based tasks with strict hourly goals; occasional contact with supervisors and

coworkers; brief, incidental contact with the general public; avoid concentrated exposure to vibration; need to sit five minutes hourly while remaining on task; and avoid rapid, repetitive turning of the neck (Tr. 947-948).  Mr. Underwood testified that at this light exertional level, the individual could perform work as a school bus monitor, conveyor line bakery worker (which is not production work), and toll collector (Tr. 948-949).

If the hypothetical person would need to alternate between sitting and standing every 30 minutes while staying on task, then the school bus monitor job would be eliminated (Tr. 950).  If the hypothetical person would need to sit for 5 minutes every 30 minutes, while staying on task, then she would be able to perform all three jobs (Tr. 950).  If the hypothetical person was limited to sedentary work (limited to standing for five minutes every hour), then the individual could perform the jobs of microfilming document preparer, sack repairer, and eyeglass frame polisher (which is also not production type work) (Tr. 950-951).

Mr. Underwood further testified that no full time work would exist for a person with the above limitations and the following individual limitations: if the hypothetical person would need to lay down or recline up to 3 times a day for 30 minutes (Tr. 951-952); if the hypothetical person could only sit for 4 hours and stand for 2 hours in an 8-hour work day (Tr. 952); if the hypothetical person was limited to lifting up to 10 pounds with only occasional reaching, handling, and fingering (Tr. 953); or if the hypothetical person could look down for only 20 to 30 minutes and then need a 30 minute break (Tr. 954).

### B.     Medical and Opinion Evidence

Plaintiff's arguments focus on Dr. Timothy Graven's May 2015/March 2019 medical source statements of Plaintiff's functional limitations and Martha Cole's third-party function report.  She argues that the ALJ did not adequately consider or weigh this evidence and that her

conclusions were not supported by the record.  Plaintiff faithfully recreates the record of her medical treatment, and it will not be repeated in detail here.

Dr. Graven first treated Plaintiff on April 29, 2014 where she presented with neck pain with radiation to her upper extremities (Tr. 454).  Dr. Graven found that Plaintiff's cervical spine was tender to palpation, that she had "pain with cervical compression relief with distraction," but that her cervical nerves were intact, her upper body reflexes were intact, and her light touch sensation was intact (Tr. 454).  She was referred to pain management for cervical epidurals and prescribed Norco 7.5/325 mg, which is a hydrocodone and acetaminophen pain reliever (Tr. 454).  Her next appointment was set for May 12, 2015, the following year, unless her symptoms worsened (Tr. 458).  On May 6, 2014, she was evaluated for pain management by Dr. Chad Shelton and epidural steroid injections were ordered (Tr. 588).  However, on May 13, 2014, Plaintiff called the office and said that she was taking 5 pills of Norco in order to walk and that she wanted something stronger (Tr. 469).  The dosage of her prescription for Norco was increased the next day (Tr. 470).  Her medication was refilled through October, 2014 (and throughout her treatment) and does not appear to have increased (Tr. 521); however, she was then seen by Dr. Graven on July 8, 2014 with additional complaints of lumbar pain (sacroiliac joint pain) (Tr. 485).  Dr. Graven found that she was "positive Patrick's test positive by thrust,"[1] and ordered a "provocative and therapeutic injection" of this joint as well (Tr. 485).  Plaintiff had not received her injections by July 29, 2014 (Tr. 495).  On August 26, 2014, Dr. Shelton saw Plaintiff again for evaluation of her lumbar spine pain and a sacroiliac joint injection was considered but further diagnostic tests were recommended

---

[1] Also known as the Faber test and designed to assist in diagnosis of pathologies in the hip, lumbar, and sacroiliac areas.  Physiopedia,  https://www.physio-pedia.com/FABER_Test (last visited 7/7/23).

(Tr. 597).  On a third encounter with Dr. Shelton on March 3, 2015, he again recommended steroid injections but noted that they were not approved by Plaintiff's insurance (Tr. 605).

Plaintiff followed up with Dr. Graven on February 10, 2015 (Tr. 552).  She continued to complain of neck and low back pain (Tr. 552).  Dr. Graven noted that an x-ray showed degenerative disk disease of the lumbar and cervical spine (Tr. 552).  Plaintiff had intact nerves but weak grip strength, positive straight leg raise, and bilateral back pain – Dr. Graven ordered an MRI which was taken later that month (Tr. 552, 560).  The MRI was "essentially normal" as to the lumbar spine and showed a "disk osteophyte complex at C5-6" (Tr. 561).  Plaintiff was directed to pain management from her neck and arm pain and physical therapy for her low back pain (Tr. 561).

Plaintiff had an epidural steroid shot in her cervical spine on March 10, 2015 (Tr. 640), her lumbar spine on March 24, 2015 (Tr. 641), and her sacroiliac joint on April 7, 2015 (Tr. 642).  And, she had a subsequent cervical nerve root steroid injection on April 28, 2015 (Tr. 643).

Throughout Dr. Graven's records from this time period, and prior to his May 2015 medical source statement, there is no note regarding the efficacy of injections for pain, there is no indication of the functional limitations occasioned by her medical issues, and there is no statement of the efficacy of the oral medication that he prescribed.  There is no notation that Plaintiff was a candidate for any surgery or that additional oral pain medication was necessary.

On July 21, 2015, Plaintiff sought additional injections in her cervical and lumbar spine because she had "significant improvement" with prior injections – it does not appear that additional therapies were ordered at that encounter (Tr. 722, 724).  On August 4, 2015, Dr. Graven noted that Plaintiff had had the injections described by Dr. Shelton and had been afforded "significant temporary relief." (Tr. 655).  Dr. Graven agreed that further injections could be beneficial with the potential of surgery should they prove unhelpful (Tr. 655).  Plaintiff had an injection in her cervical

spine on August 18, 2015 (Tr. 736) that did not result in much improvement (Tr. 744), and an injection of her lumbar spine on October 8, 2015 (Tr. 745) that resulted in a "pain-free no pain whatsoever" notation on December 1, 2015 (Tr. 662). On December 15, 2015, Plaintiff reported that she was "not quite sure" if she had relief from a cervical spine injection (which she had on November 17, 2015 (Tr. 837)) – Dr. Graven instructed her to return to pain management to consider Botox but indicated that he did not recommend surgical intervention (Tr. 669-670). On that same day, she had a facet joint injection in her lumbar spine (Tr. 839).

Plaintiff continued to receive injections from 2016 to Dr. Graven's March 2019 interrogatory, including: cervical nerve root steroid injection on February 16, 2016 (Tr. 840); cervical facet injection on April 10, 2018 (Tr. 2089), sacroiliac joint injections on March 6, 2016, July 19, 2016, March 21, 2017, April 25, 2017, February 27, 2018, and August 7, 2018 (Tr. 841, 1667, 2083, 2084, 2088, 2092); occipital medial branch nerve blocks on September 13, 2016 (Tr. 2082); and lumbar nerve root steroid injection on July 24, 2018 (Tr. 2090).

Subsequent physical examinations in 2020 revealed Plaintiff to be in no acute distress, to have normal neck range of motion (Tr. 2196, 2203, 2205, 2209, 2213, 2306), some pain and tenderness in her lower back (Tr. 2201) but otherwise normal range of motion or no tenderness (Tr. 2201, 2197, 2204, 2213, 2306). She had knee joint swelling and gait problems on May 19, 2020 (Tr. 2209)

A general take-away from the records of cervical and sacroiliac/lumbar steroid injections is that Plaintiff received significant improvement of her low back pain (Tr. 765) and mixed results of her neck pain and numbness into 2016 and continuing to 2019 (Tr. 795, 1512). Dr. Graven's records generally indicate that Plaintiff has pain in her cervical and lumbar spine, and he uniformly directs her to pain management treatments with Dr. Shelton (See, e.g., Tr. 1512, 1523, 1550, 1566).

Throughout 2018 and 2019 he did not direct monthly follow ups, but rather directed a return in 6 months to a year or only if symptoms did not improve (See, e.g., Tr. 1512, 1554; but see Tr. 1523 (directing a follow-up in one month following an acute injury to her clavicle area in November 2017)).   As such, Dr. Graven did not modify or substantially change his course of treatment throughout much of the treatment period.   Thus, in March 2019, Dr. Graven suggested additional cervical epidural injections to treat her cervical pain (at the time, x-rays revealed moderate degenerative disc disease) (Tr. 1372, 1550).

As pointed out by Plaintiff, she was diagnosed with various conditions of her back.   In the final record from Dr. Graven, he noted that she had disc bulging in her thoracic spine, no abnormalities in her lumbar spine, and pain in her neck due to a prior rotator cuff surgery (Tr. 2193).   His diagnosis was thoracic and cervical radiculopathy (Tr. 2193).   As per Dr. Graven's treatment history, he referred her to other doctors for treatment and did not order any additional medication (in addition to the Norco prescription) or recommend surgery (Tr. 2193).

### III.  Standard of Review and Legal Framework

To be eligible for disability benefits, a claimant must prove that he is disabled under the Act.   See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).   The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).   A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high."   Id.   Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."   Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider).  Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent

conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV.  <u>The ALJ's Decision</u>

The ALJ's decision in this matter conforms to the five-step process outlined above.  (Tr. 1046-1059).  The ALJ first noted that Plaintiff met the insured status requirements through December 31, 2018 and that she must establish that she was disabled on or prior to that date (Tr. 1048).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 24, 2013, the alleged onset date (Tr. 1048).  At step two, the ALJ found that Plaintiff had the severe impairments of cervical degenerative disc disease with radiculopathy, lumbar and thoracic degenerative disease, sacroiliitis, knee degenerative joint disease, headaches, major depressive disorder, panic/anxiety disorder, attention deficit hyperactivity disorder, and personality disorder (Tr. 1049).  The ALJ further found that various condition, including obesity, decreased vision, mild obstructive sleep apnea, hiatal hernia, and other conditions are non-severe or not medically determinable (Tr. 1049).  The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  The ALJ specifically addressed listings 1.02, 1.04, 11.02, 12.04, 12.06, 12.08, and 12.11 (Tr. 1050-1051).

The ALJ next determined that Plaintiff had the RFC to perform sedentary work with limitations including: never climb ladders, ropes or scaffolds, or be exposed to unprotected heights or hazardous work environments; occasionally climb stair or ramps; occasionally stoop, kneel, crouch and crawl; need to sit 5 minutes every 30 minutes or shift between sitting and standing every 30 minutes while remaining on task; occasionally reach overhead; frequently reach in all other directions; frequently engage in tasks that require fingering and handling; avoid rapid,

repetitive turning of the neck; avoid concentrated exposure to vibration; limited to remembering and carrying out simple, routine task and make simple work-related decisions; not perform production-based tasks with strict hourly goals; occasional contact with supervisors and coworkers; and brief, incidental contact with the general public (Tr. 1051). In assessing Plaintiff's RFC, the ALJ summarized the medical record, written reports from Plaintiff, assessments, and Plaintiff's testimony regarding her abilities, conditions, and activities of daily living (Tr. 1051-1057). The ALJ gave little weight to Dr. Timothy Graven's 2015 and 2019 opinions of Plaintiff's functional limitations (Tr. 1056). And she gave little weight to Martha Cole's function report (Tr. 1056).

At step four, the ALJ concluded that Plaintiff could perform no past relevant work; that her age on the alleged onset date placed her in the "younger individual" category; and that she has a high school education (Tr. 1057). The transferability of job skills was not an issue because Plaintiff is not disabled (Tr. 1057). The ALJ found at step five that someone with Plaintiff's age, education, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely school bus monitor, conveyer line bakery worker, and toll collector (Tr. 1058). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from December 24, 2013 to January 14, 2021 — the date of the decision.  (Tr. 1058-1059).

## V.  Discussion

Plaintiff argues that the ALJ failed to properly weigh Dr. Graven's opinion.  In particular, Plaintiff argues that there is no support for the ALJ's conclusion that Dr. Graven's opinion was based on Plaintiff's subjective complaints; that there is no support that the limitations were "extreme in light" of imaging and positive response to medication because Plaintiff only had

limited relief from pain injections; the ALJ did not consider Dr. Ghazi's opinion that persons with mental health issues would have a greater level of functional limitation; and that the ALJ did not consider the factors in 20 C.F.R. § 404.1527 in assessing Dr. Graven's opinion.  Thus, Plaintiff argues that because she would need to recline and lie down for up to 30 minutes, 1-3 times a day, and has the sit/stand limitations (among other things), she would be precluded from gainful, fulltime employment.

Dr. Graven's May 5, 2015 opinion is contained on three pages and is in a checkbox format (Tr. 582-584).  On the form, Dr. Graven found that Plaintiff would need to assume a reclining and a supine position for 30 minutes, 1-3 times a day, that she can sit for more than 30 minutes without pain at one sitting, that she could sit for 2-4 hours a workday without pain, that she could stand for no more than 30 minutes at a time, that she could stand for a total of 2 hours during a workday, that she could frequently lift no more than 5 pounds and occasionally lift no more than 10 pounds. He also indicated that she would miss more than 2 days of work a month due to her medical condition, and that she would miss 15% of work time due to unscheduled breaks.  He finally indicated that she could never climb, balance, or kneel, that she could occasionally stoop, crouch, and bend, that she had limited reaching, but unlimited handling and fingering.  He provides no narrative explanation for these limitations.  In a March 28, 2019 interrogatory, Dr. Graven indicated that Plaintiff has the same limitations as set forth in his previous opinion (Tr. 1374).  He further states that she can only occasionally reach, handle, finger and feel using her upper extremities.  Essentially, Dr. Graven's opinion eliminated full-time work.

A treating physician's opinion regarding a claimant's impairments is entitled to controlling weight where "the opinion is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the record."[2]
Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  Even if the opinion is not entitled to controlling
weight, it should not ordinarily be disregarded and is entitled to substantial weight.  Id.  If an ALJ
declines to give controlling weight to a treating physician's opinion, the ALJ must consider the
following factors in determining the appropriate weight: length and frequency of the treatment
relationship; nature and extent of the treatment relationship; evidence provided by the source in
support of the opinion; consistency of the opinion with the record as a whole; and the source's
level of specialization.  20 C.F.R. § 404.1527(c).  Whether the ALJ grants a treating physician's
opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good
reasons' for the weight afforded to a treating physician's evaluation."  Reed v. Barnhart, 399 F.3d
917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)); Walker v. Commissioner, Social
Security Administration, 911 F.3d 550 (8th Cir. 2018).

The ALJ concluded that Dr. Graven's opinion was mostly entitled to little weight (Tr.
1056).  In doing so, the ALJ stated:

> The undersigned grants limited to little weight to the opinions of treating
> orthopedist Timothy Graven, D.O. (8F; 19F; 21F). For his 2015 opinion, some
> weight is given to his findings regarding stooping, crouching, bending, and
> standing/sitting at one time, but the rest of his findings merit little weight. Dr.
> Graven provided little narrative in support, but certain findings were somewhat
> supported by the claimant's exams showing positive straight leg raise and spinal
> tenderness and treatment history. However, Dr. Graven's several other restrictions
> appeared extreme in light of medical imaging and subsequent positive response to
> injections and blocks lasting up to months at a time, and instead appeared to be
> largely based on the claimant's subjective complaints. In addition, findings of no
> handling or fingering limitations were not supported by exams showing decreased

---

[2] This continues to be true for plaintiff's claim because it was filed before March 27, 2017. Combs
v. Berryhill, 868 F.3d 704, 709 (8th Cir. 2017); 20 C.F.R. § 404.1527 ("For claims filed . . . before
March 27, 2017, the rules in this section apply."); § 404.1527(c)(1) ("Generally, we give more
weight to the medical opinion of a source who has examined you than to the medical opinion of a
medical source who has not examined you.").  Opinion evidence for claims filed after March 27,
2017 are governed by 20 C.F.R. 404.1520c.

grip strength (8F; 19F). On the other hand, his 2019 statement advising occasional reaching and use of the hands merits only little weight, as Dr. Graven gave no explanation in support and the degree of limitation found was not consistent with the claimant's normal hand imaging, decreased to normal grip strength, mostly intact sensation and range of motion, intact fine finger movements on other exams, and ability to drive, cook meals, do chores, and use her phone. Though Dr. Graven has treated the claimant, medical expert Dr. Ghazi had the opportunity to review more of the record.

(Tr. 1056).

Prior to this conclusion, the ALJ discussed Plaintiff's medical history and the relationship to her alleged functional limitations in detail.

The ALJ was justified in rejecting Dr. Graven's checkbox format opinion because it contained no explanation of the limitations despite containing areas where the doctor could have explained the limitations that he found.  See Nolen v. Kijakazi, 61 F.4th 575, 577 (8th Cir. 2023) (finding that the ALJ appropriately gave a treating doctor's opinion little weight where the doctor "checked some boxes and left blank the short-answer section asking what objective medical findings supported his assessment"); Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018) (finding that a treating physician's opinion, made in conclusory fashion and which "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone).  Dr. Graven simply circled and checked limitations and did not elaborate on his findings; even when prompted to do so by the form, he declined to provide explanation.  As such, the ALJ appropriately gave his opinion little weight.

The ALJ also found that the opinion was inconsistent with objective medical evidence including imaging and responses to medication.  There is no question that Plaintiff has a variety of back conditions.  In her opinion, the ALJ noted that imaging showed cervical radiculopathy, spondylosis, degenerative disc disease with mild to moderate stenosis (Tr. 1052).  She also noted that examinations showed neck tenderness and pain, decreased range of motion, decreased grip

strength, neck spasms and swelling, shoulder swelling and crepitations, and decreased sensation (Tr. 1053).   On the other hand, imaging also showed moderate but unchanged cervical degeneration and various findings that she was comfortable, in no distress, with normal range of motion, normal hands and fingers, normal fine finger movements and strength, no muscle spasms or other unusual findings (Tr. 1053).   As to her lumbar spine, the ALJ noted that imaging showed a normal lumbar spine and while examinations showed problems with gait, leg raises, tenderness, and other findings, Plaintiff also exhibited normal gaits, normal sensations, normal range of motion, and other normal findings (Tr. 1053).  The ALJ further found that while Plaintiff did have issues with receiving pain injections, and limited responses to physical therapy and chiropractic care, she did have positive relief from using ice, pain management, and opiates (Tr. 1053).  She had a reduction in headaches, lumbar pain, sacroiliac pain, swelling and pain in knees, and "some to good response in the cervical spine" which resulted in "recent MRIs [that] 'failed to demonstrate much' in the spine" (Tr. 1053).  She was not recommended for surgery, and she typically did not report side-effects from her medications (Tr. 1053).  The ALJ concluded that Plaintiff's need to lie down regularly was not supported by the medical record nor her activities of daily living.  And that, in any event, any functional limitations were addressed by her RFC which was limited to light work with postural limitations.

The ALJ's conclusion is supported by the record which was cited throughout the opinion. There is no question that Plaintiff suffered from conditions in her cervical spine (which Plaintiff focuses on) that caused pain.  There is also no question that the steroid injections she received were not uniformly efficacious, but which relieved some of that pain for a number of months. Plaintiff ignores, however, other evidence in the record cited by the ALJ.  Namely, Plaintiff benefitted from more benign treatment including ice and oral medications, that no doctor found

that she required surgery, that imaging showed mild to moderate conditions and degenerative changes, that examinations showed normal and oftentimes full range of motion, no distress, and normal gait, strength, and sensation.  In addition, the RFC formulated by the ALJ took into account Plaintiff's functional limitations by limiting overhead reaching and rapid neck movement, providing for sit/stand options, and opting to work at the light exertional level.  As to addressing the factors outlined in § 404.1527(c), the ALJ was aware of Dr. Graven's treatment history (it was outlined in the opinion), she was aware of his specialty, she noted the consistency of his opinion in light of the evidence, and further found that the opinion was not supported by the record.  The Court is mindful that an ALJ must not give merely boilerplate or blanket statements in an explanation of why a treating physician's opinion was not given controlling weight, Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020); such an explanation, however, need not be exhaustive.  Id. The ALJ appropriately considered the necessary factors in determining that Dr. Graven's opinion was not supported by evidence and not consistent with the record notwithstanding his level of specialization and treatment history with Plaintiff.  Finally, Plaintiff argues that the ALJ improperly concluded that Dr. Graven's opinions were based solely on Plaintiff's subjective complaints.  As Defendant points out, when a doctor offers an opinion that is unsupported by the medical testing, imaging, or examination, it is reasonable to conclude that some, if not all, of the opinion is based on Plaintiff's statements.  In any event, the ALJ did not simply rely on this assumption, but based her decision on the record.

Plaintiff also briefly argues that the ALJ erred in not mentioning Dr. Darius Ghazi's opinion that persons who suffer from depression and anxiety are likely to feel pain to a greater degree than "normal" people.  At a previous hearing on June 5, 2019, Dr. Ghazi, a consultative, board-certified orthopedic surgeon, opined that Plaintiff has "minimal functional limitations"

based on her impairments (Tr. 876).[3]  He also agreed, however, that persons with depression and anxiety "have a different reaction to pain" than others who do not have depression and anxiety (TR. 881).  While the testimony is not overly clear, Dr. Ghazi also appears to indicate that persons with depression and anxiety are more sensitive to pain and may have greater functional limitations than those who do not have depression and anxiety (Tr. 881).  Plaintiff argues that the ALJ ignored this testimony and failed to address it in her opinion.  Plaintiff is correct; the ALJ discussed Dr. Ghazi's opinion as to Plaintiff's functional limitations, giving his opinion partial weight, but did not address this additional opinion that depression/anxiety could exacerbate physical pain and limitations (Tr. 1055).  Defendant also has not addressed this point in his brief.

The Commissioner "will consider the medical opinions in [Plaintiff's] case record together with the rest of the relevant evidence we receive" and will evaluate "every medical opinion we receive" based on the factors used to consider all medical opinions.  20 C.F.R. § 404.1527(b)-(c). While the ALJ did not specifically address Dr. Ghazi's opinion as to Plaintiff's mental impairment, the ALJ did indicate that Plaintiff received limited mental health treatment from 2014 to 2019 and that she refused anti-depressants and psychiatric care, had limited psychotherapy and voluntarily ceased mental health treatment (Tr. 1054).  Plaintiff responded well to therapies even when her mental health conditions temporarily flared (Tr. 1045, 2325).  She also considered Plaintiff's work history and activities of daily living; noting that Plaintiff worked while she complained of neck problems, lumbar pain, depression, and panic attacks; and, that she could take care of her personal needs, socialized, completed housework, helped others, played games, shopped, moved, had a

---

[3] The ALJ found Dr. Ghazi's opinion as to Plaintiff's functional limitations more persuasive than Dr. Graven's because he had viewed more of the record.  The ALJ may rely on the opinion of an expert in orthopedics, who is familiar with the administrative process, and who has reviewed the evidence.  See, e.g., Dols v. Saul, 931 F.3d 741, 748 (8th Cir. 2019).

garage sale, and traveled to Florida (Tr. 1054; 1435, 928, 677, 485, 388, 288, 225-232).   It is clear from her opinion that she did not consider Plaintiff's mental health as limiting because of the limited treatment Plaintiff sought.  In addition, Plaintiff has pointed to no part of the record that demonstrates that her mental impairments in fact exacerbated her physical pain or limitations.  In any event, substantial evidence supports the ALJ's decision even if this part of the record was not completely addressed.  Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (stating that "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand" while also stating that "a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case") (quotation and citation omitted).  In light of the opinions and evidence that the ALJ did discuss, failure to address this part of Dr. Ghazi's opinion amounted to little more than harmless error.  Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [a plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred.").

Plaintiff next argues that the ALJ failed to properly consider the functional report prepared by Martha Cole and impermissibly found that her opinion was based on Plaintiff's subjective complaints.  The ALJ stated:

> The third party report from Martha Cole, the claimant's friend, is afforded little weight (7E).  Ms. Cole made allegations similar to the claimant that are not fully supported by the claimant's medical imaging, exams, or positive treatment response. Rather, they appeared to be largely based on the claimant's subjective complaints.

(Tr. 1056).

Ms. Cole's report is similar to Plaintiff's own account of her functional limitations and substantial evidence supports the discounting Ms. Cole's report in the same way as Plaintiff's statement of

her functional limitations.  <u>Buckner</u>, 646 F.3d at 560.  "If an ALJ explicitly discredits the claimant's testimony and give good reason for doing so, we will normally defer to the ALJ's credibility determination."  <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003).  In this case, while the ALJ did not specifically tie her conclusion to a specific part of the record, her conclusion is supported throughout the opinion.  The ALJ discussed, in detail, that Plaintiff's activities of daily living, her ability to work while allegedly suffering disabling pain and physical/mental conditions, and the efficacy of medication and pain management were inconsistent with her statements of disabling pain, need to lie down throughout the day, and inability to work.  And the ALJ found that any limitations occasioned by her physical and mental condition were accounted for in an RFC for light work with additional postural, social, and mental limitations.  Plaintiff does not specifically challenge the ALJ's conclusions as to Plaintiff's statements of functional limitation (except as set forth above) and therefore has offered no specific argument as to why the ALJ improperly discounted Ms. Cole's statements.

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

_____
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  _7th_ day of August, 2023.